

Edward K. Brass (#432)
175 East 400 South, Suite 400
Salt Lake City, UT 84111
Telephone: (801) 322-5678
Facsimile: (801) 322-5677

Matthew Hilton (#3655)
MATTHEW HILTON, P.C.
P.O. Box 781
Springville, UT 84663
Telephone: (801) 489-1111
Facsimile: (801) 489-6000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| David and Debbie Walker, for themselves, and as next best friends for Cadin Wayne Walker, McKaela Tandi Walker, and Andrew Walker, Tyree Lamph, Amy Melissa Lamph, Patti Stratton Walker, and Debbie Walker as Personal Representative of the Estate of David Walker, | COMPLAINT |
| | Civil No. **2 : 0 2 C V - 0 2 5 3 ST** |
| Plaintiffs, | |
| vs. | |
| City of Orem, a Utah municipality, Officer Harold Peterson, individually, City of Pleasant Grove, a Utah municipality, Officer John Clayton and Officer B.J. Robinson, individually, City of Lehi, a Utah municipality, Chad Smith, Harold Terry, and James Munson, individually, and JOHN DOES I-XXX, | Judge _____ |
| | JURY TRIAL REQUESTED |
| Defendants. | |

COME NOW Plaintiffs and complain of the Defendants as follows:

## I. INTRODUCTION

1. The Plaintiffs in this case seek an award of damages, attorney fees and costs under federal and state law because of the negligent (under state law), reckless, callous, malicious, deliberately indifferent, and\or intentional conduct of Defendants resulted in the unnecessary shooting and death of David Walker on December 29, 1998 at American Fork, Utah, in the driveway of his parents' home, all in violation of Plaintiffs' rights under federal and state law.

## II. JURISDICTION AND VENUE

2. Pursuant to the statutory authority of 42 U.S.C. §§ 1983 and 1988, the Plaintiffs are entitled to be heard in this Court because, under the color of state law, the Defendants, by their reckless, calloused, malicious, deliberately indifferent and\or intentional conduct, violated David Walker's and Plaintiffs' federally protected rights under the under the First Amendment (liberty against forced interstate travel), Fourth Amendment (liberty against unreasonable searches and seizures), Ninth Amendment (liberty against infringement on rights reserved to the people), and Fourteenth Amendment (liberty against denial of due process and equal protection of the law).

3. This court has pendant jurisdiction to hear Plaintiffs' claims arising under state law by reason of the Declaratory Judgment Act, U..C.A. § 78-33-10, the Governmental Immunity Act under U.C.A. §§ 63-30-10, 63-30-12, 63-30-13, and 63-30-19, and the self-executing provisions of the Utah Constitution.

4. Under the color of state law, in their official and individual capacities, Defendants' reckless, calloused, malicious, deliberately indifferent and\or intentional conduct violated Plaintiffs' rights under the self-executing provisions of the Utah Constitution, including but not limited to Article I §§ 7 (due process of law), 9 (protecting arrested persons from treatment with unnecessary rigor), 14 (right to be secure and free from unreasonable search and seizures), 24 (equal protection of the law), and 25 (rights reserved in the people).

5. To the degree individually named Defendants acted pursuant to the policies, customs, practices, procedures of Defendant municipalities Lehi, Orem and Pleasant Grove, when violating Plaintiffs' rights under the federal constitution, or violated said rights by reason of the failure of said municipalities to properly train them, Defendant municipalities are liable for their conduct that has damaged Plaintiffs. For the foregoing reasons as they similarly apply to the state constitutional violations, or pertain to state constitutional violations and any other legal wrong (including negligent conduct) because of the contractual or agency relationship to the aforesaid municipalities with the individually named Defendants, Defendant municipalities Lehi, Orem and Pleasant Grove are liable for the wrong doing of the individually named Defendants.

6. Plaintiffs have given all notices to the cities of Orem and Pleasant Grove, as required by the Governmental Immunity Act under U.C.A. §§ 63-30-11 and 63-30-13 on November 24, 1999 and again on December 12, 1999. On November 24, 1999 a complaint was filed in the Fourth Judicial District Court, in and for Utah County, Provo

District, Civil Number 990404151, wherein rights under the Governmental Immunity Act were reserved because of the giving of notice to the Cities of Orem and Pleasant Grove that day. Notices were again sent and received by registered mail on December 12, 1999. No response was made by either the City of Orem or the City of Pleasant Grove. On the morning of January 31, 2002, leave was granted to file a First Amended Complaint in the state court action, with an undertaking of $ 300.00, alleging compliance with the Governmental Immunity Act. Thereafter, in compliance with the Court Order of January 31, 2002, on February 11, 2002, the case was dismissed without prejudice under Rule 41(a) Utah Rules of Civil Procedure. Pursuant to the one-year re-filing provisions contained in the provisions of U.C.A. § 78-12-40, this federal complaint was filed on March 29, 2002, this case was filed in the United States District Court.

7. Venue is proper under 28 U.S.C. § 1393 because the causes of action arose in this district and all Defendants reside in this district.

### III. PARTIES

8. At the time of the killing of David Walker, David and Debbie Walker were his lawful parents. They also are appearing as the next best friends of Cadin Wayne Walker, McKaela Tandi Walker and Andrew David Walker, all natural children of David Walker.

9. Prior to the filing of this First Amended Complaint, Debbie Walker was appointed as the Personal Representative of the Estate of David Walker. Fourth Judicial District Court, Utah County, Provo Department, Probate Case Number 993400571. At the time of the killing of David Walker, she was in the line of fire.

10. At the time of the killing of David Walker, Tyree Lamph was his brother-in-law and was in the line of fire.

11. At the time of the killing of David Walker, Patti Walker Stratton was his sister and was in the line of fire.

12. At the time of the killing of David Walker, Amy Melissa Lamph was the sister of David Walker.

13. At the time of the killing of David Walker, the City of Orem ("Orem") was a municipality in Utah.

14. At the time of the killing of David Walker, Officer Harold Peterson ("Peterson") was a police officer of Orem. He is sued in his personal capacity. To the degree he acted in any way as outlined in paragraph 5 of this Complaint relative to the City of Orem, he is sued, with the City of Orem, for conduct engaged in while in his official capacity.

15. At the time of the killing of David Walker, the City of Pleasant Grove ("Pleasant Grove") was a municipality in Utah.

16. At the time of the killing of David Walker, Officer John Clayton ("Clayton") was a police officer of Pleasant Grove. He is sued in his personal capacity. To the degree he acted in any way as outlined in paragraph 5 of this Complaint relative to the City of Pleasant Grove, he is sued, with the City of Pleasant Grove, for conduct engaged in while in his official capacity.

17. At the time of the killing of David Walker, Officer B.J. Robinson ("Robinson") was a police officer of Pleasant Grove. He is sued in his personal capacity. To the degree he

acted in any way as outlined in paragraph 5 of this Complaint relative to the City of Pleasant Grove, he is sued, with the City of Pleasant Grove, for conduct engaged in while in his official capacity.

18.  Chief of Police Chad Smith, Harold Terry, and James Munson, ("Lehi Police Officers") were all members of the Lehi Police Department.  They  are sued in their individual capacities  individually. To the degree they acted in any way as outlined in paragraph 5 of this Complaint relative to the City of Lehi, they are sued, with the City of Lehi,  for conduct engaged in while in their official capacities.

19. At the time of the killing of David Walker, various JOHN DOES I - XXX, under the color of state law, unlawfully entered the property of David and Debbie Walker in violation of their federal and state constitutional rights against unreasonable search and seizure because, among other things, the Plaintiffs were kept in the Walker residence for questioning when (a) some of them had not been present at the time of the shooting, (b) there was no emergency that was necessary for them to remain, and not be able to accompany their son to the hospital in the ambulance while he was yet alive, and (c) no exigent circumstances of any kind existed that required Plaintiffs to remain at the Walker residence so that they were unable to be with David Walker when he died at the American Fork hospital approximately one and one-half hours later.  These persons will be added at a later date by amendment after they are more clearly identified.

## IV. FACTUAL ALLEGATIONS

20.  On or about December 28, 1998, David Walker took his sister's Subaru from his parents' home.  The car was barely functional and worth approximately $ 400.00.  After changing license plates, he continued driving the car.  Later that day, he called home to Debbie Walker and indicated he was suicidal.  In order to secure assistance from the Utah County Sheriffs' Office in locating her son, Debbie Walker was told she would have to report the vehicle as stolen.  She did as told by Deputy Case of the Utah County Sheriff's Department in order to facilitate locating her son so that he could obtain the emergency help he needed.

21.  On or about December 29, 1999, David Walker again called home to his mother Debbie Walker and reported he was suicidal.  With the assistance of law enforcement, family members traced the location of the call to Orem, Utah.  Lt. Edwards and others members of the police force of Orem responded to the identified location.  For reasons unknown to Plaintiffs, David Walker was able to evade the Orem police officers on the scene.

22. Thereafter, on December 29, 1998, Peterson and Clayton became involved in the pursuit of David Walker through several municipal and Utah County jurisdictions as he was returning to the home of his parents.  Subsequent to the pursuit, these officers killed David Walker at his parents' home.

## A. Officer Peterson

23. Originally Peterson was asked to pursue David Walker after he had evaded Lt. Edwards and other Orem police officers that had sought to locate and stop David Walker when he was making the phone call to his mother from the Sinclair gas station. Lt. Edwards asked Peterson to become involved because Lt. Edwards knew Peterson had "spikes" in his police car that could be used to stop the vehicle David Walker was driving. However, the Orem City police force lost visual contact was lost with Walker for several minutes. Under applicable mandatory policies, the chase should have been immediately called off.[1] Had Peterson ceased pursuing David Walker, Peterson would neither have been at the Walker family residence nor participated in killing David Walker.

24. Thereafter, Peterson renewed the pursuit of David Walker in Pleasant Grove, outside Orem City boundaries. Contrary to mandatory law, beginning in Pleasant Grove, Officer Peterson's involvement in the final pursuit and killing of David Walker was not supervised by a police lieutenant or sergeant.[2] Had Peterson ceased pursuing David Walker because he was not supervised by an Orem lieutenant or sergeant other than himself, Peterson would neither have been at the Walker family residence nor participated in killing David Walker.

---

[1] This failure violated mandatory Procedures of the City of Orem Department of Public Safety, policy number 1106, ¶ IV C 2 e and d.

[2] This failure violated mandatory Procedures of the City of Orem Department of Public Safety, policy number 1106, ¶ IV A.

25. The Orem police dispatch erroneously broadcast that David Walker was a threat to his family and others, when in fact he was suicidal and not a threat to anyone but himself. This was corrected, but, apparently ignored by Officer Peterson. Had the correction not been ignored, Peterson would neither have been at the Walker family residence nor participated in killing David Walker.

26. Mandatory policies of Orem require that "[p]ursuing officers will use the statewide radio channel if the pursuit enters another jurisdiction, or involves officers from another agency."[3] Peterson failed to do so. Had Peterson done so, he would have heard information from the Utah County Sheriff's Office indicating that David Walker was not violent, he was not armed, and was going to his parents' home. Had Peterson learned this information, he would have known there was no need to either pursue David Walker or kill David Walker.

27. Mandatory policies of Orem require that "[p]ursuit shall be immediately terminated if any of the following conditions exist: . . .the fleeing suspect can be identified and there is not a need for immediate apprehension."[4] David Walker was identified from the outset by all parties. It was known he was traveling in the direction of his parents' home; left alone, he did not pose an immediate threat to himself or other persons. Peterson's continuation of the pursuit of David Walker violated this requirement. Had

---

[3] Procedures of the City of Orem Department of Public Safety, policy number 1106, ¶ IV B 6.

[4] Procedures of the City of Orem Department of Public Safety, policy number 1106, ¶ IV C 2c.

Peterson ceased pursuing David Walker, Peterson would neither have been at the Walker family residence nor participated in killing David Walker.

28. After David Walker passed Center and State in Pleasant Grove, Clayton and Robinson (while in different vehicles of the Pleasant Grove police force) joined in the pursuit. Under mandatory Orem policies, Peterson's pursuit of David Walker should have ended when the two Pleasant Grove officers were in active pursuit because Peterson was not requested to do so "by a supervisor from the other agency," nor did he have "the approval of the Orem pursuit supervisor."[5] Peterson's continuation of the pursuit of David Walker violated this requirement. Had Peterson ceased pursuing David Walker, Peterson would neither have been at the Walker family residence nor participated in killing David Walker.

29. Upon information and belief, and relying on these numerous violations of mandatory policy, it is unlikely that Officer Peterson participated in the mandatory annual training regarding the policies,[6] or if he did, that he applied any reasonable effort to learning the same. Upon information and belief, Orem failed to have a procedure or test to ensure there was officer understanding and retention of constitutionally and statutorily mandated restraints on the use of deadly force.

---

[5] Procedures of the City of Orem Department of Public Safety, policy number 1106, ¶ IV D 3.

[6] Procedures of the City of Orem Department of Public Safety, policy number 1106, ¶ IV J.

30. Access to the residence and parking area at the Walker home requires vehicles to turn off a paved interstate road, drive by plowed fields on a dirt road, and turn on to a long paved driveway that cuts across a large field, and leads to a rectangular square section of asphalt where two modest homes, small barn and large parking area are located. On the evening of December 29, 1998 when David Walker, Peterson and Clayton arrived at the Walker residence, the parking area was well-lit by a full moon, a large barn outdoor light, porch light of one house, Christmas decorations on the other, and a small picket fence running in front of the home and along a portion of the parking area for the vehicles.

31. At approximately 6:20 p.m., David Walker arrived at the Walker home on December 29, 1998. He immediately exited his vehicle, left its front "brights" on (which was required to have both lights function), and stood a short distance in front of the vehicle. He faced the vehicle's headlights, was in full view, and placed a small, two-inch blade knife on his wrist.

32. Prior to Peterson's arrival as the lead vehicle, Peterson had failed to adequately coordinate his efforts or intended conduct with Clayton or Robinson. Turning off his siren while in the long driveway to the Walker home located in the middle of plowed fields, Peterson turned into the parking area and stopped immediately behind the vehicle David Walker had been driving. The red and blue warning lights on Peterson's vehicle remained on. When Peterson exited his vehicle, David Walker was standing facing forward with a two-inch knife held to Walker's wrist. In the meantime, Clayton pulled his

Page 11 of 28

vehicle into the Walker parking area behind that of Peterson. Like Peterson, Clayton had turned off his siren while coming down the Walker driveway off the dirt road.

33. Headlights from all three cars, the wig-wag lights of Peterson's vehicle, and the search light of Peterson's vehicle were all shining in David Walker's face, blinding and confusing him. Clayton's lighting from his car was different than Peterson's because it was an unmarked car. The other lighting provided from the moon, lights of the homes, barn, and Christmas decorations were all added additional light for all those present other than David Walker to see clearly and well what was occurring.

34. Despite the mandatory requirement that "[a]ll patrol officers shall have a baton readily available while on duty,"[7] as Officer Peterson exited his vehicle with out a baton; he only had a weapon drawn. There was no indication of any preparation to use non-deadly force weapons,[8] such as a straight baton or side-handle baton, an aerosol defensive tool or Kubaton,[9] all required by Orem policies. Had Peterson followed these policies to use non-deadly force, Peterson would never have participated in the killing of David Walker.

35. While Peterson shouted instructions to Clayton that could be heard in the night's silence, at no time did Peterson shout instructions or warnings to David Walker regarding David Walker's conduct, lack of conduct, or what Peterson was going to do.

_____

[7] Procedures of the City of Orem Department of Public Safety, policy number 1098.12 D.

[8] Procedures of the City of Orem Department of Public Safety, policy number 1098.10 D.

[9] Procedures of the City of Orem Department of Public Safety, policy number 1098.12 C.

36.   Peterson drew his .45 caliber firearm, told Orem dispatch he was exiting his vehicle, and shot David Walker at least twice from about twenty-eight feet away.  The first shot entered the right hip of David Walker and exited his left hip, spinning him around, and causing him to fall to the ground.  A second shot ricocheted off the pavement three or four feet and a fragment entered the back of David Walker as he fell to the ground, on his back, with his head pointing in a northerly direction towards the police officers.

37. The time from when Peterson notified dispatch he was exiting his vehicle and reported a shooting had occurred was at least thirty (30) seconds.  During this significant period of time, Peterson and any other objectively reasonable person had ample opportunity to know and understand, or should have known and understood, that (1) David Walker did not have a deadly weapon, (2) David Walker was not fleeing, (3) Peterson was not at risk of bodily harm or injury, (4) Peterson was not being fired upon, (5) David Walker's family was not being fired upon, (6) David Walker's family was not at risk for bodily harm or injury, (7) Peterson could issue and should have issued verbal commands to David Walker to avoid unnecessary use of deadly force, and (8) there was ample opportunity to follow Orem policies regarding the use of non-deadly force.

38. Peterson's use of deadly in force in this situation was not based on a "reasonabl[e] belief that the use of deadly force [was] necessary to prevent death or serious bodily injury to the officer or another person;"[10] rather, Peterson's use of deadly force against David Walker was either done negligently, intentionally, or was manifesting

---

[10] U.C.A. § 76-2-404(1)(c).

a reckless, calloused, malicious, and\or deliberate indifference to the protections federal and state law afforded David Walker against unlawful conduct of those, such as Peterson, who, while acting under the color of state law, use excessive and deadly force.

39.  Upon information and belief, but for Peterson's unlawful use of deadly force, it is unlikely that Officer Clayton would have fired at David Walker after Peterson did, and after Walker was on the ground.

40.  Peterson shot at David Walker when Tyree Lamph was in the direct line of fire.

41.  To the degree that Peterson was among those who contributed to keeping the Plaintiffs in the Walker residence so that they were unable to be with David Walker when he was still alive (either at the Walker home, in the ambulance, or at the American Fork hospital, all for approximately one and one-half hours), such was unreasonable seizure and confinement of the Plaintiffs in violation of their rights.

42.  All of the foregoing was taken under the color of state law and has served to deprive the Plaintiffs of rights protected by the United States and Utah constitutions, statutory provisions of the State of Utah, and mandatory laws of the City of Orem.

43. All of the foregoing shows fatal and other injuries to David Walker were caused by the reckless, calloused, malicious, deliberately indifferent and\or intentional conduct of Peterson.

44.  To the degree any of the foregoing actions by Peterson were not taken in accordance with City policies or subsequently ratified by policy-makers of Orem City, any reasonable police officer or government official would have known that Peterson's conduct

in violation of federal and state constitutional provisions protecting the Plaintiffs was contrary to existing, clearly defined law.

45. Neither Peterson nor the City of Orem applies policies, procedures, customs, or practices, or any other applicable law, as was done with David Walker and the Plaintiffs when dealing with other persons that were similarly situated or who were also intended to receive the benefits and protections of federal, state, and municipal law denied to David Walker and the Plaintiffs.

## B. Officer Clayton

46. Pleasant Grove policies require that unmarked vehicles "will not engage in any pursuit unless the unmarked police unit is equipped with emergency lights and siren, and the suspect driver is sought in connection with a serious or violent felony."[11] Clayton drove an unmarked vehicle while in pursuit of David Walker. Upon information and belief, Clayton's unmarked vehicle satisfied this policy. In addition, possession of a "stolen" family car worth four hundred dollars ($ 400.00), by some one who is suicidal and driving home to one's does not indicate commission of a "serious or violent felony". Had Clayton followed this policy, Clayton would neither have arrived at the Walker home nor participated in the killing of David Walker.

47. Pleasant Grove policies require that to join in a pursuit from another jurisdiction, a request must be made from that jurisdiction and the assistance be approved by Pleasant

---

[11] Pleasant Grove Police Department ¶ 1106.08 A3.

Grove.[12] Upon information and belief, no such request was made or approval was given. Had Clayton followed this policy, Clayton neither would have arrived at the Walker home nor participated in the killing of David Walker.

48. Pleasant Grove policies required that Clayton report into dispatch personnel the "[r]easons supporting the decision to pursue including the specifics of the original violation."[13] Upon information and belief, Clayton did not do so. Had he done so, the suicidal nature of the family "theft" of a four hundred dollar ($ 400.00) car by David Walker would have been disclosed and Clayton, or any other objectively reasonable officer, would have known that neither pursuit of David Walker nor use of deadly force was necessary.

49. Clayton's pursuit involved at least one officer from another jurisdiction (Peterson from Orem) and entered another jurisdiction (American Fork). Under these circumstances, Pleasant Grove policies mandated that Clayton "operate on the statewide radio channel."[14] Clayton failed to do so. Had Clayton done so, he would have heard information from the Utah County Sheriff's Office indicating that David Walker was not violent, he was not armed, and was going to his parents' home. Had Clayton learned this information, he would have known there was no need to either pursue David Walker or kill David Walker. Thus, had Clayton followed this policy, Clayton would neither have arrived at the Walker home nor participated in the killing of David Walker.

---

[12] Pleasant Grove Police Department ¶ 1106.14 A.

[13] Pleasant Grove Police Department ¶ 1106.08 B2e.

[14] Pleasant Grove Police Department ¶¶ 1106.08 B8; 1106.14 D1.

50. Pleasant Grove policies require that "[p]ursuit shall be immediately terminated if any of the following conditions exist: . . .the fleeing suspect can be identified and there is not a need for immediate apprehension."[15] David Walker was identified from the outset by all parties.  It was known he was traveling in the direction of his parents' home; left alone, he did not pose an immediate threat to himself or other persons. Peterson's continuation of the pursuit of David Walker violated this requirement. Had Peterson ceased pursuing David Walker, Peterson would neither have been at the Walker family residence nor participated in killing David Walker.

51. Pleasant Grove policies require that those engaging in a pursuit secure approval from a lieutenant or sergeant on duty.  At the time Clayton joined the pursuit and participated in killing David Walker, there was no supervising officer on duty at the Pleasant Grove Police Department.  Upon information and belief, had the City of Pleasant Grove had a supervising officer on duty, Clayton would have been called off the pursuit in conformance with mandatory policies and procedures.  Had this occurred, Clayton would neither have been at the Walker family residence nor participated in killing David Walker.

52.   Clayton pulled into the Walker parking area without a siren on.  He parked behind and to the passenger side of Peterson's vehicle. Lights from Clayton's vehicle contributed to that which blinded and confused David Walker as he stood facing the cars of both officers with a small, two-inch knife on top of his wrist.

---

[15] Pleasant Grove Police Department ¶ 1106.10 B 4.

53.  Clayton saw David Walker well and clearly under the moon, lights from the homes and barn, Christmas decorations, police spotlight, and lights from three vehicles. When Clayton heard the shots fired by Peterson, Clayton saw and knew that there was no muzzle blast from the vicinity of David Walker. Clayton knew, or an objectively reasonable officer in his position would know, that this meant that David Walker neither had nor used a weapon to threaten Peterson.

54.  Clayton saw David Walker spin-around after being shot in the hip and falling on his back on the asphalt with his head pointing north towards Clayton.  At no time did Clayton feel threatened by David Walker.

55.  After David Walker was shot by Peterson and was lying on the ground, Clayton fired at David Walker with a .40 caliber weapon, at a distance of approximately twenty to twenty-five feet, and from a kneeling position, supporting his arms and hands on the back of Peterson's vehicle.  The two shots of Clayton shared the within a millimeter the same entry wound in the front of David Walker's chest. (Having scored the seventh out of eight officers in the Pleasant Grove police force in the most recent shooting qualifications, it is most unlikely that Clayton had the degree of marksmanship that would be required to do this from any distance longer than the twenty to twenty-five feet Clayton stated he was away from David Walker.) The bullets then diverged and eventually lodged in the 2nd and 4th lumbar of David Walker.

56. Clayton's use of deadly in force in this situation was not based on a "reasonabl[e] belief that the use of deadly force [was] necessary to prevent death or

serious bodily injury to the officer or another person;"[16] rather, Clayton's use of deadly force against David Walker was either done negligently, intentionally, or was manifesting a reckless, calloused, malicious, and\or deliberate indifference to the protections and rights afforded David Walker under the United States and Utah constitutions, statutory provisions of the State of Utah, and mandatory laws of the City of Pleasant Grove.

57.  Clayton shot at David Walker when Debbie Walker and Patti Stratton were in the direct line of fire.

58.  To the degree that Clayton was among those who contributed to keeping the Plaintiffs in the Walker residence so that they were unable to be with David Walker when he was still alive (either at the Walker home, in the ambulance, or at the American Fork hospital, all for approximately one and one-half hours), such was unreasonable seizure and confinement of the Plaintiffs in violation of their rights.

59.  All of the foregoing conduct of Clayton was taken under the color of state law and has served to deprive the Plaintiffs of rights protected by the United States and Utah constitutions, statutory provisions of the State of Utah, and mandatory laws of the City of Pleasant Grove.

60. All of the foregoing conduct of Clayton shows fatal and other injuries to David Walker were caused by the reckless, calloused, malicious, deliberately indifferent and\or intentional conduct of Clayton.

---

[16] U.C.A. § 76-2-404(1)(c).

61. To the degree any of the foregoing actions by Clayton were not taken in accordance with City policies or subsequently ratified by policy-makers of Pleasant Grove City, any reasonable police officer or government official would have known that Clayton's conduct was in violation of federal and state constitutional provisions protecting David Walker and the Plaintiffs and was contrary to existing, clearly defined law.

62. Neither Clayton nor the City of Pleasant Grove applies policies, procedures, customs, or practices, or any other applicable law, as was done with David Walker and the Plaintiffs when dealing with other persons that were similarly situated or who were also intended to receive the benefits and protections of federal, state, and municipal law denied to David Walker and the Plaintiffs.

### C.  Officer B.J. Robinson (and in part Clayton)

63. After the David Walker was shot by Peterson and Clayton, Debbie Walker and Patti Walker Stratton were doing all they were told to do by the officers.  Approximately five minutes after the shooting – and still not being allowed to go to David Walker who was alive at that time – both were standing on the front porch of the Walker home.

64. Simultaneous with an order to get down, (which order Debbie and Patti Stratton were complying with),  B.J. Robinson ("Robinson") grabbed Debbie Walker and pulled her down the concrete stairs outside the home, seriously injuring  the shoulder of Debbie Walker and causing significant pain.  This injury was exacerbated by pulling Patti Stratton down on top of Debbie Walker, causing injury and significant pain to both Plaintiffs.  Both

Plaintiffs were terrified by having Robinson and Clayton thrust weapons in their faces after they had been thrown down on the concrete by Robinson.

65. To the degree that Robinson was among those who contributed to keeping the Plaintiffs in the Walker residence so that they were unable to be with David Walker when he was still alive (either at the Walker home, in the ambulance, or at the American Fork hospital, all for approximately one and one-half hours), such was unreasonable seizure and confinement of the Plaintiffs in violation of their rights.

66. All of the foregoing conduct of Robinson and Clayton was taken under the color of state law and has served to deprive the Plaintiffs of rights protected by the United States and Utah constitutions, statutory provisions of the State of Utah, and mandatory laws of the City of Pleasant Grove.

67. All of the foregoing conduct of Robinson and Clayton shows injuries to Debbie Walker and Patti Stratton were caused by the reckless, calloused, malicious, deliberately indifferent and\or intentional conduct of Robinson and Clayton.

68. To the degree any of the foregoing actions by Robinson and Clayton were not taken in accordance with City policies or subsequently ratified by policy-makers of Pleasant Grove City, any reasonable police officer or government official would have known that the conduct of Robinson and Clayton was in violation of federal and state constitutional provisions protecting David Walker and the Plaintiffs, and was contrary to existing, clearly defined law.

69. Neither Robinson, Clayton, nor the City of Pleasant Grove applies policies, procedures, customs, or practices, or any other applicable law, as was done with David Walker and the Plaintiffs when dealing with other persons that were similarly situated or who were also intended to receive the benefits and protections of federal, state, and municipal law denied to David Walker and the Plaintiffs.

### D. Lehi Police Officers

70. Chief of Police Chad Smith, Harold Terry, and James Munson, ("Lehi Police Officers") were all members of the Lehi Police Department.

71. At the time of the killing of David Walker, either by personal choice, or at the direction of the policy-maker for the Lehi Police Department, e.g. Police Chief Chad Smith, the Lehi Police Officers unlawfully entered the property of David and Debbie Walker to satisfy their own curiosity relative to the shooting, and eventual killing, of David Walker. This was in violation of the Walker's federal and state constitutional rights against unreasonable search and seizure because, among other things, (a) but for their membership in the Lehi Police Department they could not have gained access to the property, (b) the killing of David Walker did not involve any officers from their jurisdiction, (c) the killing of David Walker did not occur in their jurisdiction, and (d) no officers acting under the color of state law had requested their presence or assistance at the Walker home.

72. To the degree that the Lehi Police Officers were among those who contributed to keeping the Plaintiffs in the Walker residence so that they were unable to be with David

Walker when he was still alive (either at the Walker home, in the ambulance, or at the American Fork hospital, all for approximately one and one-half hours), such was unreasonable seizure and confinement of the Plaintiffs in violation of their rights.

73.  Upon information and belief, all of the foregoing conduct of the Lehi Police Officers was taken under the color of state law and has served to deprive the Plaintiffs of rights protected by the United States and Utah constitutions, statutory provisions of the State of Utah, and mandatory laws of the City of Lehi.

74. Upon information and belief, the foregoing conduct of the Lehi Police Officers was caused by the reckless, calloused, malicious, deliberately indifferent and\or intentional conduct of the Lehi Police Officers.

75. To the degree any of the foregoing actions by the Lehi Police Officers were not taken in accordance with City policies or subsequently ratified by policy-makers of Lehi City,  any reasonable police officer or government official would have known that the conduct of the Lehi Police Officers was in violation of federal and state constitutional provisions protecting David Walker and the Plaintiffs, and was contrary to existing, clearly defined law.

76. Neither the Lehi Police Officers nor the City of Lehi applies policies, procedures, customs, or practices, or any other applicable law, as was done with David Walker and the Plaintiffs when dealing with other persons that were similarly situated or who were also intended to receive the benefits and protections of federal, state, and municipal law denied to David Walker and the Plaintiffs.

### E. Plaintiffs Required to Leave Area

77. Despite their best efforts to remain in the Walker home, after a year the Plaintiffs who lived in the physical area where David Walker was killed by the Defendants could no longer remain.  Solely because of his death, and the need to preserve their emotional stability which had been damaged by being eye witnesses to the shooting death of David Walker,  these Plaintiffs have been required to move.

78. Their subsequent move has required an uprooting of friendships, emotional ties and financial loss.

79. But for the negligent (under state law), reckless, calloused, malicious, deliberately indifferent and\or intentional conduct of the Defendants, the Plaintiffs living in the physical area where David Walker was killed would not have moved.

80.  All of the foregoing conduct of Defendants was taken under the color of state law and has served to deprive the Plaintiffs of rights protected by the United States and Utah constitutions and statutory provisions of the State of Utah, including the right to not engage in intrastate travel.

81. All of the foregoing conduct of the Defendants shows deprivation of federal and state constitutional and statutory rights of the Plaintiffs by reason of  the negligent, reckless, calloused, malicious, deliberately indifferent and\or intentional conduct of the named Defendants.

82. To the degree any of the foregoing actions by the officers were not ratified by their respective cities, any reasonable police officer or government official would have

known that their conduct in violation of federal and state constitutional provisions protecting the Plaintiffs was contrary to existing, clearly defined law.

83. Neither Peterson, Clayton, Robinson, the Lehi Police Officers, nor the Cities of Lehi, Orem, or Pleasant Grove applies policies, procedures, customs, or practices, or any other applicable law, as was done with David Walker and the Plaintiffs when dealing with other persons that were similarly situated or who were also intended to receive the benefits and protections of federal, state, and municipal law denied to David Walker and the Plaintiffs.

### COUNT I

### VIOLATION OF PROVISIONS OF THE UNITED STATES CONSTITUTION

84. Paragraphs 1 - 83 are incorporated herein by this reference.

85. All of the foregoing violated the protections David Walker and Plaintiffs under the First Amendment (liberty from forced interstate travel), Fourth Amendment (liberty from unreasonable searches and seizures), Ninth Amendment (liberty from infringement on rights reserved to the people), and Fourteenth Amendment (liberty from denial of due process and equal protection of the law), all enforceable by the private right of action afforded by the provisions of 42 U.S.C. §§ 1983 and 1988.

86. The Plaintiffs were damaged by the foregoing action of the Defendants in violation of these constitutional protections in an amount to be shown at trial.

## COUNT II

## VIOLATION OF THE PROVISIONS OF THE
## UTAH CONSTITUTION

87.  Paragraphs 1-86 are incorporated herein by this reference.

88.   All of the foregoing violated the right of David Walker and Plaintiffs to protections under Utah Constitution as stated in Article I § 1 (inherent and inalienable right to life and liberty), § 7 (due process of law), § 9 (protecting persons arrested from treatment with unnecessary rigor), § 14, (right to be secure in one's person) § 24, (equal protection of the law), and § 25 (reserved rights in the people).  All of these clauses are self-executing and capable of providing a basis for monetary and other forms of relief.

89.  Plaintiffs were damaged by the foregoing action of the Defendants in an amount to be shown at trial.

## COUNT III

## FAILURE TO TRAIN

90.  Paragraphs 1 - 89 are incorporated herein by this reference.

91.   All of the foregoing demonstrates a failure of the Cities of Lehi, Orem and Pleasant Grove to provide adequate training for their officers in (1) following mandatory policies and procedures, (2) using deadly force, (3) adhering to clearly defined constitutional law (both state and federal), and (4) dealing with those who are suicidal.

92.   This basic fact pattern of this tragedy with David Walker is a composite of common, expected occurrences for which law enforcement officials should be, and necessarily must be, prepared.  The numerous police policies and procedures already in

place regarding such matters attest to their expected occurrence. To the degree that the conduct of the Cities of Lehi, Orem, and Pleasant Grove failed to provide adequate training for police officers in these areas, constitutes a wilful choice among competing policies, and constitutes a negligent, intentional or reckless, calloused, malicious, and deliberately indifferent disregard by the named Cities to the rights of the Plaintiffs protected by clearly defined federal and state constitutional law as well as mandatory state and municipal law.

93. Plaintiffs were damaged by the foregoing action of the Defendants in an amount to be shown at trial.

## COUNT IV

## NEGLIGENT CONDUCT

94. Paragraphs 1-93 are incorporated herein by this reference.

95. The Defendants have a duty to not negligently injure the Plaintiffs or deprive them of life as outlined in this complaint.

96. All of the foregoing factual occurrences indicate that the Defendants have breached that duty and negligently deprived and injured the Plaintiffs as outlined above.

97. The Defendants' breach of that duty has damaged the Plaintiffs in an amount to be shown at trial.

## REQUEST FOR A JURY

The Plaintiffs respectfully request that a jury be impaneled to hear any factual questions that the Court deems to be appropriate matters for resolution by the jury.

## PRAYER FOR RELIEF

1.  Plaintiffs pray that this Court will impanel a jury as requested;

2.  Plaintiffs pray that this Court will allow the jury to award damages to them for injuries outlined in this complaint;

3.  Plaintiffs pray that a permanent injunction will issue against Defendants for illegal and unconstitutional conduct as outlined in this complaint, so that it is not repeated against any of the Plaintiffs or any other citizen of United States and Utah;

4.  Plaintiffs pray that in addition to damages for Plaintiffs, attorney fees and costs will be awarded under 42 U.S.C. § 1988 and any other applicable theory, including private attorney general; and

5.  Any other equitable or legal relief deemed appropriate by the Court.

DATED and EXECUTED this 29th day of March, 2002.

_____
Edward K. Brass
Matthew Hilton of Matthew Hilton, P.C.
Attorney for Plaintiffs